HEATHER E. WILLIAMS, #122664
Federal Defender
RACHELLE BARBOUR, #185395
Assistant Federal Defender
Designated Counsel for Service
OFFICE OF THE FEDERAL DEFENDER
801 I Street, 3rd Floor
Sacramento, CA  95814
Telephone: (916) 498-5700

Attorney for Defendant
DAVID LEE ARNETTE

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case Nos.  Cr. S. 08-166-KJM |
| | ) | Cr. S. 10-118-KJM |
| Plaintiff, | ) | |
| | ) | MR. ARNETTE'S NOTICE OF MOTION AND |
| v. | ) | MOTION FOR ELIMATION OF CONDITIONS |
| | ) | AND DISCHARGE OF FEDERAL |
| DAVID LEE ARNETTE, | ) | CONDITIONAL RELEASE |
| | ) | |
| Defendant. | ) | Chief Judge Kimberly J. Mueller |
| | ) | Date: May 9, 2022 |
| | ) | Time: 9:00 a.m. |

TO UNITED STATES ATTORNEY PHILLIP A. TALBERT, AND ASSISTANT U.S. ATTORNEY CAMERON DESMOND:

Please take notice that on May 9, 2022, at 9:00 a.m., the Court has set a hearing on the instant Motion, which is based on the record in this case, the exhibits previously submitted by the Defense on March 28, 2022, additional exhibits submitted in support of this Motion, the points and authorities cited below and in the Reply brief, and any other evidence submitted by the Defense, including at an evidentiary hearing, if one is ordered by the Court.  The Defense moves under 18 U.S.C. section 4243 for elimination of conditions of supervision and Mr. Arnette's discharge from his previously-imposed conditional release.

The Court has previously noted that it will decide whether to hear testimony on this matter.  The Defense believes it can sustain its burden on the written record, but should the Court

ARNETTE – Motion

1

elect to hear testimony, the Defense will endeavor to subpoena witnesses to support the documentary record.

## I.     Prior Procedural History of Mr. Arnette's Federal Cases

The Court requested that the parties set forth a record of the procedural history of Mr. Arnette's Federal cases.  Defense counsel has compiled this history from its files, the court dockets, sealed records, communications with the BOP, and probation documents.[1]

### A.  Central District of California Case Number Cr. 01-cr-00143-RSWL

Mr. Arnette first appeared in Federal Court on February 7, 2001, in the Central District of California, when he was arraigned on a complaint.  Online access to this document is not available in PACER, but other documents indicate that this was a bank robbery, under 18 U.S.C. section 2113(a).  Undersigned counsel does not have any arrest reports for this case, but it is discussed in various evaluations and assessments.

Mr. Arnette was detained, an indictment was filed, and it appears that competency was questioned.  On April 19, 2011, the District Court filed an order setting a competency hearing and appointing an evaluator to consider Mr. Arnette's competency pursuant to 18 U.S.C. sec. 4241.

| 04/19/2001 | 21 | ORDER filed by Judge Ronald S. Lew as to David Lee Arnette : It is ord that a status conf is set for 1:30 p.m. on 6/4/01 pur to 18:4241(e). It is further ord that Dr. Saul Faerstein shall be appt to conduct the eval of dft pur to 18:4241 & the CJA, 18:3006A & that Dr. Faerstein shall provide the ptys w/cpys of the rpt & file the rpt with the Crt, under seal. (cc: all counsel) (dmap) (Entered: 04/20/2001) |

After several continuances, the Defense provided notice under Federal Rule of Criminal Procedure 12.2 of its intent to raise an insanity defense.  That same day, the Court issued an

| 07/31/2001 | 31 | ORDER filed by Judge Ronald S. Lew as to David Lee Arnette : for appointment of an expert to evaluate the sanity of dft. It is ord that Dr. Saul Faerstein shall be appointed to conduct the evaluation of dft pursuant to 18 U.S.C. 4242 and the Criminal Justice Act, 18 U.S.C. 3006A to determine dft's sanity. Dr. Faerstein shall provide the parties with copies of the report and file the report with the court, under seal. (cc: all counsel) (dm) (Entered: 08/01/2001) |

---

[1]     Almost all these records are contained in the voluminous court files in this case.  However, some of them have previously been filed under seal, so counsel will continue to analyze the record to determine if any of them must be filed as exhibits.

ARNETTE – Motion                                                                                      2

order that the same expert evaluate Mr. Arnette under 18 U.S.C. section 4242 on the issue of

insanity.

It appears that the competency hearing and the sanity hearing were jointly held, and on

October 12, 2001, the District Court issued a verdict of not guilty by reason of insanity.

| 10/16/2001 | 33 | VERDICT filed as to David Lee Arnette rendering a verdict of not guilty David Lee Arnette (1) count(s) 1 (dm) (Entered: 10/17/2001) |
| 10/16/2001 | 36 | MINUTES OF 1ST DAY COURT TRIAL held before Judge Ronald Lew as to David Lee Arnette : Rendering of not guilty as to David Lee Arnette (1) count(s) 1. Crt finds dft not guilty by reason of insanity. Crt sets case for 11/26/01 at 10:00 a.m. for commitment hrg. C/R: Roger May (dmap) (Entered: 10/19/2001) |

The matter was referred back to the same evaluator.  The matter was continued for over a

year for what the docket calls a commitment hearing.  In March 2003, the Court referred the

matter to a different evaluator.  There is a lack of clarity in the docket at this point.  Eventually,

on March 15. 2004, the Court ordered Mr. Arnette released on conditional release with certain

conditions.  That order is attached as Exhibit C.

On May 18, 2004, a bench warrant issued.[2]  Mr. Arnette appeared in the Central District

on August 16, 2004, where the Court revoked his conditional release and ordered him sent to a

Federal Medical Center.  During the next two years, it appears that Mr. Arnette filed a habeas

petition which eventually was rejected by the District Court and the denial was affirmed by the

Ninth Circuit.  During this time, Mr. Arnette also attempted to sue his federal public defender, in

June 2005.  He filed a petition for writ of habeas corpus from BOP in March 2006.  He filed a

federal complaint against the BOP.  All were dismissed for procedural reasons.

On December 6, 2006, the Central District conditionally released Mr. Arnette.  This order

is attached as Exhibit D.  It appears that in June 2007, a violation petition was filed, and Mr.

Arnette was arrested and appeared on June 8, 2007.  Eventually, Mr. Arnette was found in

violation, and on September 11, 2007, he was again conditionally released.  Exhibit E.

On January 7, 2008, a violation petition was filed, followed by a superseding violation

petition on January 19, 2010 (both for the crime charged in our district below).  By this point Mr.

---

[2]     From this point on, the Probation violation petition filed at Document 240 on January 28, 2022 compiles much of this information in chronological form.  Undersigned counsel attempts to use actual dates of release in the following chronology, where they differ from the date of the Release Order.

Arnette was appearing in the Eastern District of California (discussed below) and the Central

District eventually transferred jurisdiction over this case to the Eastern District on March 24,

2010 so that it could be related to the new case.  (This transferred case is now numbered Cr. S.

10-118-KJM.)

      B.  Eastern District Proceedings

      On March 17, 2008, a complaint was filed in this District charging Mr. Arnette with bank

robbery, possession of ammunition by a previously committed mental patient, a false statement

on a firearm application, and felon in possession of a firearm.  (Cr. S. 08-cr-00166 [all docket

references will be to this case].) Mr. Arnette first appeared on March 26, 2008.  Undersigned

counsel was on duty.  Mr. Arnette sought to represent himself and was permitted to do so by the

Magistrate Judge, with standby counsel.

      Mr. Arnette was detained and indicted.  He continued to appear in pro se at his

arraignment and in front of the District Judge.  At a status hearing on April 30, 2008, the

Government raised a doubt regarding Mr. Arnette's competency.  Mr. Arnette (in pro se)

opposed it.  On May 2, 2008, the Government filed an order for a mental evaluation of Mr.

Arnette, and on May 9, 2008, the Court committed him to the BOP for competency evaluation

under 18 U.S.C. section 4241(b).  (Docket 13.)  Mr. Arnette filed a pro se request for a 30-day

delay in the evaluation, stating that he had in his cell evidence leading to the prosecution of

people for murder and other heinous crimes.  Mr. Arnette was being held in the psychiatric unit

at the jail at that time.  (Docket 15.)

      Hearings were continued several times while Mr. Arnette was evaluated by BOP at the

Metropolitan Detention Center in Los Angeles.  On August 7, 2008, BOP deemed Mr. Arnette

incompetent and asked for his commitment for restoration.  He was then sent back to Sacramento

County Jail.

      Once Mr. Arnette was back at the Jail, the County of Sacramento independently sought

court approval to give Mr. Arnette antipsychotic medication in the absence of his capacity to

give informed consent.  (Sac. Sup. Court No. 08MH0650, filed Aug. 21, 2208).

On September 4, 2008, District Judge England appointed undersigned counsel to represent Mr. Arnette, finding that he was unable to represent himself.  (Docket 20.)  At that point, Mr. Arnette was receiving psychiatric treatment at the jail, and the parties continued the competency matter to allow for that treatment.  On October 29, 2008, the parties and Mr. Arnette appeared and submitted on the issue of competency, and the Court ruled that Mr. Arnette was not competent.  (Docket 29.)  The next day, the Court ordered Mr. Arnette committed to the BOP for treatment to restore competency under 18 U.S.C. section 4241(d).  (Docket 30.)

Mr. Arnette was sent to the BOP facility in Springfield, Missouri for restoration of competency.  Although he improved, on April 17, 2099, the BOP requested additional time to restore him to competency.  On August 19, 2009, the BOP certified Mr. Arnette's competency and returned him to Sacramento.

Mr. Arnette next appeared in this Court on November 6, 2009.  (Docket 42.)  Soon thereafter, he pled not guilty by reason of insanity on two counts of the indictment pursuant to a plea agreement.  (Dockets 44 & 45.)  On November 25, 2009, the Court ordered him evaluated under 18 U.S.C. section 4243.  (Docket 48.)  Mr. Arnette went off again to the BOP facility in Springfield, Missouri, which on February 9, 2010, returned a report finding that Mr. Arnette posed a risk under 4243(c).  The matter was next heard in court on March 11, 2010.  On March 16, 2010, the Court committed Mr. Arnette to BOP as a danger on the 2008 case.

Meanwhile, to avoid relitigation of these issues in two districts, the parties and the Probation Office requested that the Central District case be transferred to this District.  It was transferred in March 2010, and in April 2010, Mr. Arnette admitted the violations in 10-cr-00118, and the two cases were ordered related to each other.  (Docket 60 & 61.)  On April 30, 2010, the conditional release in the original Central District case was revoked, and Mr. Arnette was committed to BOP in that case as well.

Mr. Arnette went back to BOP in Springfield, Missouri.  In January 2011, the cases were reassigned to Your Honor.  Since then, Mr. Arnette has cycled in and out of BOP on conditional release four times.

Cycle 1:

1. March 9, 2011 – BOP Risk Assessment Report recommending release

2. May 18, 2011 – Addendum to BOP Report

3. June 30, 2011 -- Warden certified conditional release (Docket 63) (Amended July 27, 2011 [Docket 70])

4. August 3, 2011 -- Court's Release Order (Docket 76)

5. November 2, 2011 – Violation Petition Filed (drug use, alcohol use, curfew violation)

6. November 10, 2011 -- Violation Petition Heard (Docket 81), Mr. Arnette released (Docket 82)

7. January 13, 2012 -- Violation Petition Filed (failure to abide by location monitoring) (Docket 85)

8. January 23, 2012 -- Violation Petition Heard (Docket 89)

9. April 30, 2012 – Released (Docket 99)

10. May 8, 2012 -- Violation Petition Filed (failure to abide by location monitoring, failure to follow mental health treatment) (Docket 100)

11. May 30, 2012 -- Violation Petition Heard (Docket 106)

12. September 18, 2012 -- Released (Docket 124)

13. April 17, 2013 -- Violation Petition Filed (failure to abide by location monitoring) (Docket 126)

14. June 19, 2013 -- Remanded to BOP for Treatment (Docket 135)

15. Mr. Arnette sent to BOP facility in Springfield, Missouri.

Cycle 2:

1. September 25, 2014 -- Warden's Request for Conditional Release (Docket 143, 144)

2. October 23, 2014 -- Order Granting Release (Docket 142)

3. March 17, 2015 -- Violation Petition (failure to abide by location monitoring) (Docket 145)

4. March 25, 2015 -- Violation Petition Heard

5. March 27, 2015 -- Released (Docket 150, 152)

6. June 4, 2015 -- Violation Petition (unlawful drug use, failure to participate in drug testing) (Docket 153)

7. July 22, 2015 -- Mr. Arnette seeks to represent himself, Court remands Mr. Arnette to BOP for examination and treatment for competency (Docket 161)

8. December 4, 2015 – Forensic report by BOP at MDC-Los Angeles, finding Mr. Arnette not competent, Mr. Arnette returned to Sacramento

9. January 20, 2016 -- Violation Petition hearing (Docket 171)

10. January 27, 2016 -- Mr. Arnette returned to BOP for restoration to competency (Docket 174)

11. Mr. Arnette sent to BOP facility in Springfield, Missouri

12. May 5, 2016 – Order Modified to revoke Mr. Arnette's conditional release (Docket 176).

Cycle 3:

1. April 27, 2017 -- Risk Assessment Report recommending release

2. May 4, 2017 -- Warden Letter

3. June 29, 2017 -- Status Conference while Mr. Arnette still at BOP (Docket 182)

4. July 14, 2017 -- Order Granting Conditional Release (Docket 185)

5. July 27, 2017 -- BOP social worker Audra McConnell brings Mr. Arnette to Sacramento

6. August 10, 2017 -- Hearing on Violation (Docket 188)

7. August 14, 2017 -- Violation Petition Filed (failure to participate in mental health treatment, failure to abide by location monitoring) (Docket 190)

8. November 1, 2017 -- Hearing on Petition (Docket 201)

9. November 1, 2017 -- Mr. Arnette ordered "Remanded to the Bureau of Prisons' Springfield facility for the shortest time necessary to restore the defendant's regime of treatment and recommend to the court a plan that will ensure ongoing and sustainable residence in the community at a suitable facility that will provide for the defendant's needs" (Docket 201)

10. November 22, 2017 -- Signed Order Remanding Mr. Arnette to BOP (incorporating November 1, 2017 instructions and transcript) (Docket 204).

11. Mr. Arnette sent to the BOP facility in Rochester, Minnesota

Cycle 4:

1. June 1, 2020 -- BOP Risk Assessment recommending Conditional Release (Docket 212)

2. July 30, 2020 -- Warden Certificate (Docket 213)

3. August 17, 2020 -- Status Conference held on Zoom, Mr. Arnette at BOP with BOP Social Worker (Docket 210)

4. August 28, 2020 -- Conditional Release Order (Docket 216)

5. September 9, 2020 -- Release Date, BOP social worker brings Mr. Arnette to Sacramento

6. October 28, 2020 -- Violation Petition (failure to take medication, failure to participate in mental health treatment, failure to notify of change in residence) (Docket 218)

7. November 12, 2020 -- Hearing on Violation Petition with Social Service Providers (Docket 224)

8. November 12, 2020 -- Released (Docket 225)

9. November 17, 2020 – Petition withdrawn

10. May 12, 2021 -- Violation Petition (failure to participate in drug testing) (Docket 228)

11. August 9, 2021 -- Disposition Hearing (Docket 236) with BOP and Social Service Providers

12. August 18, 2021 -- Released[3] (Docket 239)

13. January 28, 2022 -- Violation Petition (Docket 239)

14. April 4, 2022 – Appearance out of custody, Petition Dismissed

This matter is currently set for May 9, 2022 on the instant motion.

II.     Current Procedural Posture and Applicable Law

Mr. Arnette was found not guilty by reason of insanity (NGI) in both cases.  The Court previously committed Mr. Arnette to the custody of the Attorney General under 18 U.S.C. section 4243(a) as discussed above.  It has also previously released Mr. Arnette from BOP when it has received the appropriate certificate under 18 U.S.C. section 4243(f) opining that Mr. Arnette's release "under a prescribed regimen of medical, psychiatric, or psychological care or treatment, would not create a substantial risk of bodily injury to another person or serious damage to property of another."  18 U.S.C. section 4243(e)(2), 4243(f)(2).

Mr. Arnette having been previously released under 4243(f)(2), "[t]he court at any time may, after a hearing employing the same criteria [as set forth above], modify or eliminate the regimen of medical, psychiatric, or psychological care or treatment."  This gives this Court jurisdiction to consider Mr. Arnette's Motion to eliminate his treatment regimen and end his federal supervision.

Section 4243, in conjunction with section 4247, lays out what type of hearing is required. Section 4243(f) states that the hearing shall be "conducted pursuant to the provisions of section 4247(d)."  Section 4247(d) provides that the subject of the hearing "shall be represented by counsel" (as Mr. Arnette is).  The subject "shall be afforded an opportunity to testify, to present

---

[3]     After this release, Mr. Arnette sustained the following local involuntary commitments: Oct. 15, 2021, UC Davis Psych ER; October 28, 2021, Sierra Vista Hospital until January 13, 2022 Release; January 23, 2022, 5150 Petition to Heritage Oaks Hospital (Exh. A); March 1, 2022, Conservatorship Denied (Exh. B).

1    evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who

2    appear at the hearing." Id.  Although this section allows for an evidentiary hearing, it does not

3    mandate that the subject call live witnesses and does not foreclose a court from deciding these

4    issues on a documentary record.  It is thus completely within this Court's discretion to set an

5    evidentiary hearing.

6        To eliminate the treatment regimen, the Court must consider the criteria in section

7    4243(f):  the Court must determine if Mr. Arnette's release "would no longer create a substantial

8    risk of bodily injury to another person or serious damage to property of another."

9        Subsection (f) incorporates the standard set forth in subsection (d) regarding the burden

10   of proof.  Subsection (d) places that burden on the Defense, by either clear and convincing

11   evidence or by a preponderance of the evidence.  By whichever standard, the Defense's burden is

12   to prove that Mr. Arnette's release "would not create a substantial risk of bodily injury to another

13   person or serious damage of property of another due to a present mental disease or defect."  18

14   U.S.C. section 4243(d).

15       For this case, the Defense's burden is to prove this by a preponderance of the evidence,

16   because the offenses for which Mr. Arnette was found NGI did not "involve[] bodily injury to, or

17   serious damage to the property of, another person, or involve[] a substantial risk of such injury or

18   damage."  18 U.S.C. section 4243(d).

19       As discussed above, Mr. Arnette's first case was a bank robbery under 18 U.S.C. section

20   2113(a).  The second case involved two counts, bank robbery under 18 U.S.C. section 2113(a)

21   and being a previously involuntarily committed person in possession of ammunition under 18

22   U.S.C. section 922(g)(4).  The Defense is unaware of any actual bodily injury to or serious

23   damage to the property of another person in either of Mr. Arnette's cases.  Certainly, none is

24   cited in any of the records reviewed by the Defense, and the plea agreement in the second case

25   discloses no actual injury or damage.  (Doc. 45.)

26       Accordingly, it appears the only question is whether any of the offenses "involved[] a

27   *substantial risk* of [bodily injury to, or serious damage to the property of, another person]."  18

28   U.S.C. section 4243(d).  It should be noted that almost identical language has been repeatedly

ARNETTE – Motion                                                              10

held void for vagueness in other federal criminal contexts:  Johnson v. United States, 576 U.S.

591 (2015) (ACCA); United States v. Davis, 139 S.Ct. 2319 (2019)(18 U.S.C. section

924(c)(3)(B)); Sessions v. Dimaya, 138 S.Ct. 1204 (2018)(18 U.S.C. section 16(b) with respect

to immigration cases.)

These Supreme Court cases repeatedly discuss the difficulty in applying such a vague

standard, nothing that the analysis should not be a "judicially imagined 'ordinary case' of a

crime."  Johnson, 576 U.S. at 597.  The pitfalls of the language identified in these cases may help

guide the Court in the current analysis.

Even assuming that the substantial risk language is constitutional, the offenses do not

qualify.  Mr. Arnette was charged with and acquitted by reason of insanity of unarmed robberies

under section 2113(a), which can be committed or attempted "by force or violence" or "by

intimidation."  18 U.S.C. section 2113(a).  He was also charged with an acquitted by reason of

insanity possession of ammunition.  Such crimes do not invariably involve a "substantial" risk of

bodily injury to another, or serious damage to property.  As discussed in Johnson, this type of

language invokes a "wide-ranging [indeterminate] inquiry" and "invites arbitrary enforcement by

judges."  576 U.S. 591, at 597.  The Court noted that there is "grave uncertainty about how to

estimate the risk posed by a crime."  Id.  It gave examples: "How does one go about deciding

what kind of conduct the 'ordinary case' of a crime involves?  'A statistical analysis of the state

reporter? A survey? Expert evidence? Google? Gut instinct?'"  576 U.S. 591, at 597, quoting

United States v. Mayer, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial

of rehearing en banc.)  The Court noted how "speculative . . . this enterprise can become."  Id.

Later, with respect to the possibility of remote risk, the Court asked, "But how remote is too

remote?"  Johnson, 576 U.S. at 600.  The Court noted that "many of the cases the Government . .

. deem[s] easy turn out not to be so easy after all."  Id., at 602.

Johnson supports a real-world, fact-specific analysis of substantial risk in this case.  "As a

general matter, we do not doubt the constitutionality of laws that call for the application of a

qualitative standard such as 'substantial risk' to real-world conduct."  Johnson, 576 U.S. at 603-

04.  Further, the very purpose of section 4243 is to gauge Mr. Arnette's dangerousness, with

1    respect to his past conduct, and to the likelihood of possible future risk.  All of these concerns

2    weigh in favor of looking at the facts of the crimes of which Mr. Arnette was found NGI.

3           The facts of those cases show that there was no actual bodily injury or serious harm to

4    property, and that there was no "substantial risk" of such.  Mr. Arnette used a note in both cases;

5    there was no weapon; there was no altercation; there was no risky flight; there was no actual

6    force.  They both appear to be committed by intimidation.  Although intimidation may place

7    someone in fear, that does not mean that the act itself involved a substantial risk of bodily injury.

8    Further a risk of bodily injury to Mr. Arnette does not satisfy the statute, it must be to "another

9    person" and it must be "substantial."

10          Bodily injury is a term of art.  The sentencing guidelines define bodily injury as "any

11   significant injury; *e.g.*, an injury that is painful and obvious, or of a type for which medical

12   attention ordinarily would be sought."  USSG sec. 1B1.1, app. N. 1(B).  The Ninth Circuit has

13   held that "bodily injury entails the use of violent, physical force."  United States v. Calvillo-

14   Palacios, 860 F.3d 1285, 1291 (9th Cir. 2017).  None of Mr. Arnette's prior offenses meet this

15   standard.

16          Accordingly, the Defense asks this Court to find that its burden is by a "preponderance of

17   the evidence" and not "clear and convincing evidence" under section 4243(d), although – as

18   discussed below – it believes that its evidence meets either standard of proof.

19

20   III.    MR. ARNETTE DOES NOT POSE A SUBSTANTIAL RISK OF BODILY

21           INJURY OR SERIOUS DAMAGE TO PROPERTY

22          As discussed above, the Defense must show that Mr. Arnette does not pose a substantial

23   risk of either bodily injury to another person or serious damage to property of another due to his

24   mental illness.  Mr. Arnette's recent history, over the past 10+ years, shows that he does not pose

25   such a risk.

26          As the Court knows, Mr. Arnette has a history of going off his medications.  He has also

27   been insufficiently medicated by staff who did not understand his needs.  He also decompensated

28   quickly during periods of transition, such as when he has been discharged from BOP, or when he

was released from his involuntary commitment in January.  Even when medicated, Mr. Arnette suffers from the symptoms of mental illness.

During the times that Mr. Arnette has been non-compliant, he has wandered.  At times, he has used alcohol.  In the past, he violated curfew.  He has never suffered new criminal charges.  Since his release in 2011, Mr. Arnette has never committed any violent or threatening act.  He has not damaged property.  Even unmedicated, Mr. Arnette's only danger is to himself.

Mr. Arnette is currently 62 years old.  As Mr. Arnette's illness has progressed, and he has become older, frailer, and more gravely disabled, the risk of any danger has lessened.  For example, the police officer who interacted with Mr. Arnette in the middle of the night on January 23, 2022 and issued the 72-hour 5150 hold stated that Mr. Arnette "doesn't know where he lived and been walking since sundown" and that officers "took Arnette to his last address, who advised that he didn't live there.  Arnette tried to enter the house thinking he lived there."  (Exh. A.)  Mr. Arnette was detained as "gravely disabled."  Mr. Arnette had been on the streets ten days at that point.

At that point, Mr. Arnette was taken to Heritage Oaks Hospital for involuntary hospitalization and evaluation.  At the hospital, Mr. Arnette repeatedly discussed going to "happy homes" – his previous residence.  It was noted that he "had been found wandering and disorganized in public."

Mr. Arnette was not able to take care of himself, and the facility was forced to file a *Riese* petition on January 26, 2022 in state court, for authority to medicate him without requiring his informed consent.  That was granted on January 31, 2022, and Mr. Arnette received an anti-psychotic shot soon afterward.

The Defense has detailed Mr. Arnette's most recent time on conditional release in its status report.  Prior occasions involved many of the same issues: periods of medication compliance, usually accomplished with significant support from service providers, interspersed with decompensation, when Mr. Arnette would wander away from his housing option and eventually be found on the street.  And importantly, with respect to compliance with medications, a variety of treatment providers have taken a stab at finding a treatment regimen

1    that can fully address Mr. Arnette's mental illness, and none have been able to achieve anything

2    close to fully remission of his symptoms.  More frequently, treatment providers have opined that

3    Mr. Arnette is "gravely disabled" because of his mental illness.

4         At Heritage Oaks Hospital, Mr. Arnette was assigned a social worker who communicated

5    with SEWP, the Federal Defender's Office, and the Probation Office.  The treating psychiatrist at

6    Heritage Oaks referred Mr. Arnette for a mental health (LPS) conservatorship with the County of

7    Sacramento, given Mr. Arnette's severe disability, his need for ongoing care, and his repeated

8    involuntary hospitalizations.  The Public Guardian's Office, which handles such referrals,

9    obtained supportive documentation from undersigned counsel, and spoke with the Probation

10   Office and community providers.  Ultimately, in March 2022, it denied the referral for LPS

11   conservatorship on the basis that "There is no evidence beyond a reasonable doubt that Mr.

12   Arnette has exhausted the alternatives to LPS Conservatorship."  (Exh. B.)

13        The Public Guardian did not contest that Mr. Arnette was gravely disabled, but it felt that

14   other options might still be tried and cited the oversight that U.S. Probation provides as one

15   reason for the denial.  In refusing to conserve Mr. Arnette, the Public Guardian leaned hard on

16   what it perceived could be alternatives offered by the Probation Office, without fully

17   understanding the struggle that the parties to this case have engaged in to get Mr. Arnette to this

18   point.

19        LPS Conservatorship would have enabled Mr. Arnette to have a County Conservator who

20   could oversee his affairs.  It would cut through the red tape with the County.  It would give him

21   access to locked facilities, and to a step-down system all overseen by one entity.  It would have

22   consolidated financial and mental health guardianship.  It would give providers access to Mr.

23   Arnette's treatment records.  Yet, the County denied it, in part because of the perception that the

24   federal government would be able to fill these roles.

25        It is becoming increasingly clear that Mr. Arnette's continued status on federal

26   conditional release is keeping him from obtaining necessary services in the county, including a

27   conservatorship.  Mr. Arnette is closely linked to services in the community for his mental health

28

disorder.  He needs trained professionals to step up and care for him, without the crutch of a federal system that cannot truly provide anything but prison as an option.

The Defense moves this Court to terminate Mr. Arnette's conditional release.  He has proven that despite his significant mental health issues he is not a risk to the public.  Notably, during Mr. Arnette's periods of non-compliance, he has never posed a danger to person or property.  Mr. Arnette's greatest danger is to himself, in that he is gravely disabled and simply cannot take care of himself without help.  The recent involuntary hospitalizations and repeat 5150 actions prove it.  When Mr. Arnette has been non-compliant, he has literally hurt himself – physically and emotionally.  For example: he has previously suffered a severe cut to his foot; more recently he fell down; he has gotten lost; he has had to sleep in the streets in the cold; he has trouble sleeping and getting food.

Accordingly, the Defense requests that the Court terminate conditional release and discharge Mr. Arnette from federal supervision.

Respectfully Submitted,

DATED:  April 6, 2022                HEATHER E. WILLIAMS
                                     Federal Defender

                                     /s/ Rachelle Barbour
                                     RACHELLE BARBOUR
                                     Attorney for Defendant
                                     DAVID LEE ARNETTE