UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States, | No. 2:10-cr-00118-KJM-1 |
| Plaintiff, | No. 2:08-cr-00166-KJM-1 |
| v. | ORDER TO SHOW CAUSE |
| David Lee Arnette, | |
| Defendant. | |

This matter is before the court on David Lee Arnette's motion for elimination of conditions and discharge of federal supervision, which this court imposed in 2010 after the Central District transferred jurisdiction over this case. *See* Mot., ECF No. 203.[1] Plaintiff United States opposes the motion. Opp'n, ECF No. 204. Mr. Arnette has replied. Reply, ECF No. 205. The court held a hearing on the motion on May 9, 2022. ECF No. 206. Cameron Desmond appeared for the government and Rachelle Barbour appeared for Mr. Arnette, who was present. U.S. Probation Officer Steven Sheehan, who currently supervises Mr. Arnette, also attended the hearing. For the reasons below, **the court orders the government to show cause why the court**

---

[1] Citations to the docket in this order refer to filings in case No. 2:10-cr-00118-KJM-1. Because Mr. Arnette filed the identical motion in related case No. 2:08-cr-00166-KJM-1, this order applies equally to both cases.

1

**should not order the government to provide a report to this court identifying all reasonable efforts it has made to cause the State of California to assume custody of Mr. Arnette**.

## I.    BACKGROUND

Mr. Arnette first appeared in federal court in early 2001, after being arraigned on bank robbery. Mot. at 2. Later that year and following a competency hearing, the court found him not guilty by reason of insanity. *Id*. at 3. While there is "lack of clarity in the docket" as to what happened between the court's finding and early 2004, the court released Mr. Arnette on conditional release in March 2004. *Id.* The court revoked Mr. Arnette's conditional release later in 2004 and he was confined to a Federal Medical Center for the next two years. *Id.* After again being conditionally released in late 2006, he violated the terms of that release and was arrested in mid-2007. *Id.* He was conditionally released again in September 2007. *Id.* In 2008, he was charged in this District with robbery, possession of ammunition, a false statement on a firearm application, and felon in possession of a firearm. *Id.* at 4. Following a mental evaluation, the federal Bureau of Prisons (BOP) found him incompetent and requested his commitment for restoration. *Id.* From the fall of 2008 through late summer 2009, Mr. Arnette remained at a BOP facility in Springfield, Missouri. *Id.* at 5. After his competency was deemed restored, he then pled not guilty by reason of insanity on two counts of the indictment subject to a plea agreement. *Id.* Mr. Arnette was returned to the Springfield facility for further evaluation under 18 U.S.C. § 4243[2] and, in March 2010, the court committed him to BOP as a danger in the 2008 case. *Id.* That same month, his case in the Central District of California was transferred and related to a case in this district. *Id*. at 5. In late April 2010, the court revoked the conditional release in the transferred case and Mr. Arnette was returned to BOP custody in Springfield. *Id.*

---

[2] 18 U.S.C. § 4243, which provides for hospitalization of a person found not guilty only by reason of insanity, provides, in relevant part:

> (a) Determination of present mental condition of acquitted person.--If a person is found not guilty only by reason of insanity at the time of the offense charged, he shall be committed to a suitable facility until such time as he is eligible for release pursuant to subsection (e).

2

Since Mr. Arnette's case was reassigned to this Judge in early 2011, he has continued to cycle in and out of court hearings and BOP medical facilities four separate times; when not in the BOP he has been on conditional release with supervision by a federal probation officer. *Id.* at 5. Between March 2011 and June 2013, Mr. Arnette's violations of supervision terms included drug and alcohol use, curfew violation, failure to abide by local monitoring, and failure to comply with prescribed medical treatment. *Id.* at 6.  In mid-2013, the court ordered him returned to the BOP facility in Springfield and he remained there until his release in October 2014. *Id.*  In the spring and summer of 2015, he repeatedly violated the terms of his release, though all of his violations were non-violent. *Id.* at 7.  On December 14, 2015, the BOP found Mr. Arnette not competent and the court returned him to the BOP once again for restoration. *Id.*  In May 2016, the court issued a modified order revoking his conditional release. *Id.*

In April 2017, the BOP again recommended releasing Mr. Arnette given his reported restoration to competency. *Id.*  But by August of that year, Mr. Arnette again violated the terms of his release by failing to participate in mental health treatment and local monitoring. *Id.*  In November 2017, the court ordered Mr. Arnette remanded again to the BOP, this time "for the shortest time necessary to restore [his] regime of treatment" and develop a plan for a sustainable residence after his release. *Id.* at 8.  Instead of returning Mr. Arnette to Springfield where he had a history of treatment, the BOP sent him to a medical facility in Rochester, Minnesota, where he stayed until his conditional release in early Fall 2020. *Id.*  At that time, the court granted conditional release after reviewing a detailed release plan developed in conjunction with BOP staff and agreed to by Mr. Arnette. *See generally* Order Granting Conditional Release, ECF No. 169, Defendant's Acknowledgment and Agreement, ECF No. 170.  These conditions included Mr. Arnette's residing at Our Happy Homes in Sacramento, supervision by U.S. Probation, participation in mental health care and drug and alcohol treatment, and taking medication as prescribed by his medical provider. *Id.*

Within two months of being released in 2020, Mr. Arnette again did not participate as required in mental health treatment, did not take his medication, and did not notify the supervising authorities that he had left his residence. Mot. at 7; Order re: Petition for Warrant,

3

ECF No. 171.  In early November, the court held two violation hearings and a status conference.  ECF Nos. 174, 176, 177.  At the status conference, a social worker from the Federal Defender's Office, representatives from Our Happy Homes, a Sacramento County mental health representative, a T-CORE mental health provider representative with the County of Sacramento,[3] a U.S. Marshals representative, and counsel all discussed the release plan for Mr. Arnette.  *See* ECF Nos. 176 & 177.  The court agreed to release Mr. Arnette to the custody of a T-CORE representative.  Order for Release (Nov. 12, 2020), ECF No. 178.  The court also modified the terms of his conditional release, requiring Mr. Arnette to "allow a treatment or housing provider to store, oversee, and administer his medications" and to "agree to the use of a representative payee for his Social Security and other benefits."  Stipulation and Order Modifying and Imposing Release Conditions at 2, ECF No. 180.

In the spring of 2021, after complying with the terms of his conditional release for six months and despite Happy Homes' and the probation officer's best efforts, Mr. Arnette refused to participate in mandatory drug testing.  Mot. at 7; Order re Pet. for Warrant or Summons for Offender Under Conditional Release at 10, ECF No. 181.  A magistrate judge issued a detention order in June 2021, ECF No. 184, and the court held violation hearings that summer, ECF Nos. 185, 186 & 189.  Mr. Arnette submitted a request for conditional release and a release plan in early August 2021, which provided for a higher, more intensive level of community-based care, including 24/7 crisis support.  Conditional Release Plan at 2–3, ECF No. 187.  The request also noted that cycling Mr. Arnette in and out of BOP custody in different states made it difficult to reestablish and obtain services for him once he returned to Sacramento.  *Id.* at 5.  Mr. Arnette submitted two more memoranda supplementing information about his release plan, including a proposed new residence located close to T-CORE and a wellness program, and managed by an individual who worked with T-CORE clients.  *See* ECF Nos. 188 & 190.  The court again ordered

---

[3] T-CORE, or Transitional Community Opportunities for Recovery and Engagement, contracts with Sacramento County to provide outpatient services for adults who have a qualified mental health disability.

Mr. Arnette's conditional release in mid-August 2021. Order for Release (Aug. 16, 2021), ECF No. 192.

In October 2021, Mr. Arnette was admitted to the UC Davis emergency room with severe symptoms of psychosis. Status Report at 2–3, ECF No. 201. Mr. Arnette was treated at UC Davis Hospital and then Sierra Vista Hospital from late October 2021 through mid-January 2022, at which time he was discharged and the Federal Defender arranged for housing at a new residence, the Ripley House in Sacramento. *Id.* at 3–4. After a few uneventful days at Ripley House, Mr. Arnette went for a walk without his cell phone, got lost and disoriented, and ultimately was hospitalized again upon being located by a Sacramento Police Officer. *Id.* at 4. Mr. Arnette had been "lost and wandering" for about ten days, which represented a violation of the terms of his conditional release. *Id.*; Order re Petition for Violation of Probation/Supervised Release, ECF No. 193. This court executed an arrest warrant for Mr. Arnette in March 2022. *See* Arrest Warrant Returned Executed, ECF No. 196. Mr. Arnette now moves for elimination of conditions and discharge of federal supervision. *See generally* Mot. The government opposes his motion. Probation Officer Sheehan supports Mr. Arnette's request.

**II.    DISCUSSION**

Mr. Arnette moves to eliminate his current treatment regimen and end his federal supervision in order to be eligible for the only program his counsel says is appropriate for him at this time: a mental health conservatorship with the County of Sacramento's Public Guardian Office. *See generally* Mot.; *id*. at 14. Mr. Arnette's counsel represents she is "unaware of any actual bodily injury to or serious damage to the property of another person in either of Mr. Arnette's [federal] cases," which both involved bank robbery without a weapon. Mot. at 10. She argues Mr. Arnette's greatest danger is to himself, *id*. at 15, and that at this point it is the government's statutory responsibility to arrange for Mr. Arnette's care by the State of California and the County of Sacramento as an agency of the State, Reply at 5.

The government opposes, arguing there is no plan in place to properly address Mr. Arnette's mental health, drug addiction, or living situation. *See generally* Opp'n. The government also notes that Mr. Arnette's most recent risk assessment by BOP, from 2020,

5

indicates he still poses a danger to himself and the public if released, and that nothing in the record indicates his mental health has meaningfully improved since that evaluation. *Id*. at 1. The government also points to Mr. Arnette's criminal history prior to the 2001 bank robbery, which "included primarily property crimes, but also battery, hit and run, and assault." *Id*. at 2.[4] At the April 4, 2022 violation hearing, ECF No. 202, Mr. Arnette's Probation Officer told the court he was prepared to request the violation petition filed in January be dismissed.[5]

        This court is of course not the first to be assigned a case posing the challenges of someone in Mr. Arnette's shoes: a person charged with federal crimes who has a significant mental illness precluding resolution through trial or an informed guilty plea, and who also has no financial resources and no family or community support. In *United States v. Ecker*, 489 F. Supp. 2d 130, 131 (D. Mass. 2007), which Mr. Arnette's counsel point to in reply, another district court addressed a question similar to the one the court has faced here, repeatedly: how to proceed when the federal government opposes release to the state of a defendant in federal custody because the state previously denied a transfer request. The court in *Ecker* first reviewed the text of the statute the defense invokes here, 18 U.S.C. § 4246; this provision governs the care of offenders with mental disease or defect, *Ecker*, 489 F. Supp. 2d at 135–36. Section 4246(d) provides, in part, that if the court finds a defendant should be committed to the custody of the Attorney General, "[t]he Attorney General shall make all reasonable efforts to cause such a State to assume such responsibility [for defendant's custody, care, and treatment,]" and "shall continue periodically to exert all reasonable efforts to cause such a State to assume such responsibility," even if a

---

[4] Under 18 U.S.C. § 16, the term "crime of violence" means:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

[5] The court's assertion here is confirmed based on its review of a draft transcript of the court hearing.

defendant is released conditionally under a prescribed regimen.[6]  18 U.S.C. § 4246(d).  The court concluded: "The text of the statute clearly emphasizes the provisional nature of federal custody for the mentally ill; permanent arrangements must be made with the state." *Ecker*, 489 F. Supp. 2d at 136.

 The court also observed that 18 U.S.C. § 4247(i), which outlines actions the Attorney General is authorized to take, makes it clear what the government is required to do to comply with the "reasonable efforts" requirement of § 4246(d).  *Id.* at 137.  It also noted the legislative history "underscores the burden on the Attorney General to make a serious effort to cause the State to assume responsibility." *Id.*  In particular, "[w]ith respect to [subsection i], the accompanying Senate Report states: It is intended that the Attorney General will make the application for State commitment unless there is clear reason not to do so in a particular case." *Id.* (quoting S.Rep. No. 225 at 254, U.S.C.C.A.N., 3436).  Accordingly, the court ordered the

---

[6] Section 4246(d) reads in full as follows:

(d) Determination and disposition.--If, after the hearing, the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General. The Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment. The Attorney General shall make all reasonable efforts to cause such a State to assume such responsibility. If, notwithstanding such efforts, neither such State will assume such responsibility, the Attorney General shall hospitalize the person for treatment in a suitable facility, until--

(1) such a State will assume such responsibility; or

(2) the person's mental condition is such that his release, or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would not create a substantial risk of bodily injury to another person or serious damage to property of another;

whichever is earlier. The Attorney General shall continue periodically to exert all reasonable efforts to cause such a State to assume such responsibility for the person's custody, care, and treatment.

7

Attorney General to "provide a detailed report within six months to this Court identifying all reasonable efforts exerted to cause the Commonwealth of Massachusetts to assume custody of Ecker." *Id.* The court detailed specific actions the Attorney General should take to determine how defendant might be transferred, including but not limited to those identified in 18 U.S.C. § 4247(i).[7] *Id.* While the court was "loath to engage in such detailed oversight of the Attorney General's efforts," it found it had no alternative given the terms of the statute and the fact defendant had been in federal custody at the Federal Medical Center in Springfield, Missouri for more than a decade. *Id.* at 133, 137–138. The court finds the *Ecker* court's analysis compelling, and tentatively adopts it in this case in which Mr. Arnette has been under federal supervision for over 14 years, since March 2008, with intermittent periods of confinement at federal medical facilities in other parts of the country.

Because the defense pointed to *Ecker* for the first time on reply, the court will provide the government the opportunity for supplemental briefing in response to this order to show cause, if it

---

[7] 18 U.S.C. § 4247(i) provides as follows:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (i) Authority and Responsibility of the Attorney General.—The Attorney General—

(A) may contract with a State, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody pursuant to this chapter;

(B) may apply for the civil commitment, pursuant to State law, of a person committed to his custody pursuant to section 4243, 4246, or 4248;

(C) shall, before placing a person in a facility pursuant to the provisions of section 4241, 4243, 4244, 4245, 4246, or 4248, consider the suitability of the facility's rehabilitation programs in meeting the needs of the person; and

(D) shall consult with the Secretary of the Department of Health and Human Services in the general implementation of the provisions of this chapter and in the establishment of standards for facilities used in the implementation of this chapter.

wishes to formally address the question of the application of 18 U.S.C. § 4246(d), the statute on which the *Ecker* court relies.

### III.  CONCLUSION

**The court orders the government to show cause within 21 days why the court should not follow the approach described in the *Ecker* case discussed above and order the government to detail the steps it has taken to transfer Mr. Arnette into state custody.**

IT IS SO ORDERED.

DATED:  June 23, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE