IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case Nos.  2:08-cr-00166-KJM-1 |
| | ) | 2:10-cr-00118-KJM-1 |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| DAVID LEE ARNETTE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant David Lee Arnette's 'motion for elimination of conditions. Mot., ECF No. 250.[1] The government opposes, Opp'n, ECF No. 254, and the defendant has replied, Reply, ECF No. 251. For the reasons below, the court **grants the motion**.

I.  BACKGROUND

This case has a lengthy procedural history, which the court previously summarized in a prior order. *See* Order to Show Cause at 2–5, ECF No. 253. In short, Mr. Arnette has been found not guilty by reason of insanity in both cases captioned above and has a long history under supervision in this district. The court previously committed Mr. Arnette to the custody of the Attorney General under 18 U.S.C. § 4243(a). Over the years, the court has conditionally

---

[1]   Citations to documents on the docket are to the 2008 criminal case at 2:08-cr-00166-KJM, as that docket reflects the most complete record of this matter.

1

released him multiple times from that custody, including his most recent release from the Bureau of Prisons (BOP) on October 28, 2020. Prior Order (Aug. 28, 2020), ECF No. 216.

On April 6, 2022, the defense moved under 18 U.S.C. § 4243 for elimination of conditions of supervision and Mr. Arnette's discharge from his previously imposed conditional release. Mot. On October 20, 2022, the Probation Office submitted a memorandum to the court, memorializing the assigned Probation Officer's position recommending the court "terminate [Mr. Arnette's] conditional release." Probation Off. Mem. at 2 (Mem.), ECF No. 268. Specifically, the Probation Officer opined, "I do not believe Mr. Arnette presents a danger to the community." *Id.* His opinion is based on Mr. Arnette's age of 62 years, his "poor physical condition likely due to periods of incarceration or being unhoused," and Mr. Arnette's "diminished mental capacity," as well as "the passage of time since his last sustained criminal offense." *Id.* On Monday, November 7, 2022, the court heard from the parties and the Probation Officer on this matter. *See* Mins., ECT No. 267. Rachelle Barbour appeared for Mr. Arnette and Cameron Desmond appeared for the government. *id.* At hearing, the government did not request an evidentiary proceeding on the issue of dangerousness.[2]

**II.    DISCUSSION**

Because Mr. Arnette has previously been released under § 4243(f)(2), "[t]he court at any time may . . . modify or eliminate the regimen of medical, psychiatric, or psychological care or treatment." In other words, the court has the authority to eliminate Mr. Arnette's conditions and discharge him from federal supervision, as he requests.

/////

/////

---

[2] At one point during the hearing, Mr. Arnette interjected that he wanted to represent himself. Given his general appearance and state of disorientation, and counsel's representation that he has declined the medication he requires to achieve mental stability, the court did not construe his motion as one the court needs to resolve. *Cf. Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008) ("[T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so."). Given the court's history with the case, it is satisfied that defense counsel more than adequately represents Mr. Arnette and that at this time Mr. Arnette is not in a position to represent himself or make an informed decision related to self-representation.

**A. Burden of Proof**

Title 18 U.S.C. § 4243(f) incorporates the burdens of proof set forth in § 4243(d), placing the burden on the defense, by either clear and convincing evidence or by a preponderance of the evidence, depending on whether the underlying offense involved "bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage."  The court need not reach the question of which burden of proof applies to Mr. Arnette's motion, as it finds Mr. Arnette has met his burden under either standard.  By either standard, given the record before the court, Mr. Arnette has established his unconditional release "would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect."  18 U.S.C. § 4243(d).

**B. No Substantial Risk**

The court finds Mr. Arnette does not pose a "substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." 18 U.S.C. § 4243(d).  This finding is based on the lengthy factual and legal record in this case, including the status report and exhibits submitted by the defense on March 28, 2022, ECF No. 248, additional exhibits submitted in support of the defense motion for elimination of conditions, Mot., the declaration by defense counsel, Decl. of Rachelle Barbour (Barbour Decl.), ECF No. 265, and the memorandum filed by the Probation Officer, Mem.  The finding also takes account of the changes evident in Mr. Arnette's behavior and risk characteristics over time.

Mr. Arnette's mental illness has been intractable, leading to his repeated commitments, not only in these federal cases, but in the local community.  Currently, Mr. Arnette's mental illness and homelessness have caused him to be incarcerated at the Sacramento County Jail since August 19, 2022.  Both defense counsel and the Probation Officer confirmed at the November 7, 2022 hearing that Mr. Arnette is unmedicated and has been found by professional staff at the jail to be "gravely disabled."  Under California law, this means Mr. Arnette has repeatedly been found to be "unable to provide for his . . . basic personal needs for food, clothing, or shelter" because of his mental illness.  Cal. Welf. & Inst. Code § 5008(h)(1)(A).

/////

At the November 7 hearing, defense counsel proffered that, should this court release Mr. Arnette, Sacramento Jail Psychiatric Services would assess him under California Welfare and Institutions Code § 5150(a) for grave disability, the standard he already has been found to meet within the jail. This state statute provides for a 72 hour hold for "assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility. . . ." Cal. Welf. & Inst. Code § 5150(a). Should Mr. Arnette be deemed "gravely disabled" during the assessment period, he would be involuntarily detained in a mental health facility for treatment and could be conserved. Cal. Welf. & Inst. Code § 5250. The process associated with this type of detention provides for notice, hearings, and counsel to represent Mr. Arnette. Cal. Welf. & Inst. Code § 5150 et seq. Conversely, if Mr. Arnette can be "properly served without being detained," he will be released with the support of his community services provider. Cal. Welf. & Inst. Code § 5150(c). In either event, Mr. Arnette will continue to be offered services through Sacramento County Behavioral Health and local agencies, which will have assumed responsibility for his care.

The court acknowledges Mr. Arnette's past reflects that he previously "incurred numerous violations of his conditional release" and has a "lengthy criminal record." Mem. at 1–2. In Mr. Arnette's last formal risk assessment by the BOP on June 1, 2020, the Risk Assessment Panel noted Mr. Arnette's "extensive history of engaging in aggressive behaviors" and "expressed concerns about Mr. Arnette engaging in violent behaviors in the future." Risk Assessment at 18, ECF No. 212 (sealed). The panel agreed he would "no longer create a substantial risk of bodily injury to another person or serious damage to property of another" if the then-proposed conditions were imposed. *Id.* at 21. The court has considered this assessment, and given the balance of the record, finds the panel's conclusions are not controlling at this time. Mr. Arnette has met his burden of showing he no longer poses substantial risk of danger even if federal conditions are removed. *Cf. United States v. Brooks*, 33 F.4th 734, 737 (5th Cir. 2022) (affording "broad deference to district court factual determinations under § 4243" because "the district court had a chance to see the defendant and review the pertinent testimony firsthand"). The BOP risk assessment was conducted more than two years ago, and in reaching its

conclusion, the panel relied on a criminal history dating back to 1972, with Mr. Arnette's most recent serious charge incurred more than a decade ago, in 2009, and a slightly more recent disciplinary infraction incurred in custody in 2011. Risk Assessment at 18 at 9-10. As confirmed by the Probation Officer at hearing, Mr. Arnette has not suffered any new criminal charges or criminal arrests since his initial release here on conditional release in August 2011. Mem. at 1–2. The court has no evidence he has damaged property or posed a physical danger to anyone in that time. The evidence shows instead that for eleven years Mr. Arnette has repeatedly been rendered homeless on the streets of the Sacramento region, attracted police attention due to his own vulnerability, suffered injuries and illness on the streets, and been found multiple times to be gravely disabled. *See* Mot. at 9 n.3; Ex. A, ECF No. 250-1; Ex. B, ECF No. 250-2; Barbour Decl.; Mem.

As noted, Mr. Arnette is currently 62 years old. As his illness has progressed, and he has become older, frailer, and more gravely disabled, his behavior indicates the risk of any danger has lessened. For example, the police officer who interacted with Mr. Arnette in the middle of the night on January 23, 2022 and issued the 72-hour section 5150 hold at that time stated that Mr. Arnette "doesn't know where he lived and [has] been walking since sundown" and that officers "took Arnette to his last address, who advised that he didn't live there. Arnette tried to enter the house thinking he lived there." Ex. A. Mr. Arnette was detained then as "gravely disabled." *Id.* Mr. Arnette had been on the streets ten days at that point. *Id.*

In Mr. Arnette's most recent period of homelessness, he visited the Federal Defender's Office and the Probation Office repeatedly for help, most recently appearing at the Probation Office in August 2022, in "poor physical and mental condition." Mem. at 2; Barbour Decl. ¶ 5. He was "dehydrated, suffering from sunburns around his face/head and exposed extremities, and he was observed to be in a poor mental state due to being unmedicated while unhoused on the streets of Sacramento." Mem. at 2. The record compels the conclusion that even when Mr. Arnette is unmedicated, the only danger he has posed in the past decade has been to himself.

/////

/////

5

**C. The State of California Best Positioned To Assume Care**

The record in this case shows the local state-funded behavioral health system has the authority, the jurisdiction, and the means to care for Mr. Arnette's mental illness and to protect him and the public. Treatment providers have repeatedly opined that Mr. Arnette is "gravely disabled" because of his mental illness. The appropriate placement for someone so gravely disabled, and no longer dangerous, is in the state-run mental health treatment system, not in the federal criminal system. *Cf. Higgins v. United States*, 205 F.2d 650, 653 (9th Cir. 1953) ("[T]he care of insane persons is essentially the function of the states in their sovereign capacity as parens patriae.").

Congress contemplates this approach to persons such as Mr. Arnette. The relevant statutes repeatedly encourage federal authorities to release a committed defendant "to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment." 18 U.S.C. § 4246(d). The law instructs the Attorney General to make "all reasonable efforts to cause such a State to assume such responsibility." *Id.* Title 18 of the United States Code, section 4247(i) further emphasizes the Congressional interest in having the Attorney General use State procedures and local and private agencies to provide "confinement, hospitalization, care, or treatment of, or the provision of services to" a defendant like Mr. Arnette. The government acknowledges this framework, and has indicated the Bureau of Prisons has previously attempted such a transfer to the State of California, but without success. ECF No. 258-1. While the record does not reflect that the Attorney General has attempted such a release to the County of Sacramento, or tried to contract with the County or any local or private agency for Mr. Arnette's care and treatment, the court's ruling in this order will accomplish this purpose and avoid perpetuation of an endless, vicious cycle of BOP placements and release: Mr. Arnette will be released to the local authorities and private agencies who have already assumed responsibility for his custody, care, and treatment.

The court's ruling is further supported by the recent truncated attempt by local authorities to have Mr. Arnette conserved under the State of California's Lanterman-Petris-Short (LPS) Act. The treating psychiatrist at the Heritage Oaks facility referred Mr. Arnette for LPS

conservatorship with the County of Sacramento, given Mr. Arnette's grave disability, his need for ongoing care, and his repeated involuntary hospitalizations. The Public Guardian's Office, which handles such referrals, denied the referral for LPS conservatorship on the basis that "[t]here is no evidence beyond a reasonable doubt that Mr. Arnette has exhausted the alternatives to LPS Conservatorship." Ex. B. The Public Guardian did not contest that Mr. Arnette was gravely disabled, but cited the federal supervision overseen by this court as one reason for the denial. *Id.* In refusing to conserve Mr. Arnette, the Public Guardian relied significantly on an assumption that meaningful alternatives are offered by the federal system of justice. As reviewed above and in prior court orders, those alternatives have been exhausted for some time now.

### III.    CONCLUSION

During Mr. Arnette's repeated unmedicated and unsupervised periods in the community, particularly over the last several years, he has proven he is not a risk to the public. Notably, during Mr. Arnette's periods of non-compliance, there is no evidence of any danger to person or property, much less the "substantial risk of bodily injury to another person or serious damage of property of another" required to continue to hold him in federal custody. Mr. Arnette's greatest danger is to himself, in that he is gravely disabled and simply cannot take care of himself without help. Accordingly, the court **grants Mr. Arnette's motion.** The court **eliminates all previously imposed conditions, terminates conditional release, and discharges Mr. Arnette from federal supervision.**

IT IS SO ORDERED.

DATED: November 17, 2022.

CHIEF UNITED STATES DISTRICT JUDGE

7